## STOCKWELL v. THE C. C. & D. R. Co.

1. **Practice:** INSPECTION BY JURY. In an action against a railway company for damages for the burning of a lumber yard, alleged to have been set on fire by sparks from defendant's engine, it was pleaded that the engine was fed with coal and emitted sparks only when steam was used, and that for some distance from the yard the grade was such that steam was not used; during the trial the jury inspected the ground, and the possibility of running a train as alleged was practically demonstrated: *Held*, that the experiment was without prejudice to the plaintiff. Whether or not it might not also be justifiable as a means of arriving at a controverted fact, *quaere*.

2. **Juror:** STATEMENTS BY. That a juror, pending the trial, made statements to persons not interested in the case respecting the effect of the evidence, was held not to vitiate the verdict.

3. **New Trial:** DISCRETION OF THE COURT. While the granting of new trials rests largely within the discretion of the court, it is nevertheless a legal discretion and must be exercised in accordance with the rules of law.

*Appeal from Clinton District Court.*

TUESDAY, JUNE 13.

ACTION to recover the value of lumber burned by fire alleged to have been caused by a locomotive operated upon defendant's railroad. No negligence on the part of defendant's employes is alleged. The value of the lumber destroyed is averred to be $61,066. There was a verdict for defendant, which the court set aside on the grounds of misconduct of the defendant. The plaintiff, by the judgment of the court, was required to pay the costs of the first trial. Defendant appeals from the order setting aside the verdict, and plaintiff appeals from the judgment rendered against him for costs. The facts of the case appear in the opinion.

*Corning & Grohe, A. R. Cotton* and *W. E. Leffingwell,* for plaintiff.

It is not incumbent upon the party asking for a new trial on the ground of the misconduct of a juror to show that in

point of fact the verdict was influenced thereby. (*McDaniels v. McDaniels*, 40 Vt., 363.) A verdict will be set aside if it be shown that the jury have been approached during the trial and information volunteered upon matters in issue, although not with the knowledge of the party. (*Bradbury v. Cony*, 62 Me., 223.) Juries should be preserved not only from improper bias, but from the suspicion of it. (*Perkins v. Knight*, 2 N. H., 474; *Knight v. Freeport*, 13 Mass., 217.) It requires a stronger showing to reverse an order granting than one refusing a new trial. (*Howell v. Snyder*, 39 Iowa, 610; *N. Y. Piano Forte Co. v. Mueller*, 38 Id., 552; *Roberts & Bro. v. Jones*, 30 Id., 525.)

*S. P. Adams* and *Geo. B. Young*, for defendant.

The misconduct of jurors, when the parties are not in fault, must be gross and have resulted in manifest injury to afford ground for a new trial. (*Clark v. Lebanon*, 63 Me., 393; *Rich v. Taylor*, 20 Minn., 378; *Harrison v. Price*, 22 Ind., 167.) The matter out of, or from which misconduct is claimed, must to avail, be material and essential. (Code, § 2837; *Stewart v. B. & M. R. R. Co.*, 11 Iowa, 64; *Woodward v. Leavitt*, 107 Mass., 453; *Peacham v Carter*, 21 Vt., 515.) By consenting to go on with the trial after becoming aware of any fact which would vitiate the verdict and failing to object, a party loses his right to object after the verdict is rendered. (*Dunlavy v. Watson*, 38 Iowa, 401; *Coffin v. Gebhart*, 18 Id., 256; *Riley v. Monahan*, 26 Id., 507; *State v. Fuller*, 34 Conn., 280; *Hallock v. Franklin Co.*, 2 Met., 560; *Fox v. Hazleton*, 10 Pick., 275; *Crosby v. Blanchard*, 7 Allen, 386; *Bourke v. James*, 4 Mich., 336; *Barlow v. The State*, 2 Blackf., 114; *Whittaker v. Carter*, 4 Ired., 461.)

BECK, J.—The verdict was set aside by the court below solely on the ground of the misconduct of the defendant. While plaintiff claims in his motion that the verdict was in conflict with the evidence and the law, as given the jury by the court, this point is not relied upon in this court. Indeed, we understand counsel for plaintiff to admit that the case is not

one which demands interference with the verdict on the ground that it wants the support of evidence. The abstract upon which the case is presented here was not prepared to present that question.

It is urged that several motions are presented in the abstract, which show separate acts amounting to misconduct of jurors trying the case, and that plaintiff was guilty of misconduct participated in by some of the jurors, which vitiates the verdict. The ground of complaint last referred to we will first consider, and inquire whether it presents sufficient justification of the ruling of the court in setting aside the verdict. The like consideration and inquiry will be made in proper order, concerning the other grounds of objection to the verdict.

I. It becomes necessary to state quite briefly the issues between the parties and certain evidence introduced thereon.

The lumber burned was in the yard of plaintiff about or near his saw mill. The fire originated in the night, no very great time after a train upon defendant's road had passed. The railroad passes near the mill and through the lumber yard, that is, the lumber yard is upon both sides of the road. The main issue involved the fact of the fire originating from the locomotive, the plaintiff claiming to show by circumstances that it did, and defendant introducing the same kind of proof to establish that it did not. One of the circumstances relied upon by defendant was, that the locomotive, which was drawing a train of more than thirty cars, passed the mill and lumber yard without the use of steam, and persons accustomed to handle engines, and familiar with railroads and their operation, testified that engines using coal for fuel, which was the kind of fuel used by the locomotive which passed the lumber yard just before the property was burned, never communicated fire along the road when steam was not used. It was an important question of fact whether the locomotive alleged to have set the fire did actually use steam at the place on that occasion. Plaintiff's testimony tended to prove that it did and defendant's proof tended the other way. The evidence on this point was conflicting. But the evidence clearly estab-

lishes that trains had passed the point without the use of steam. The engineer operating the locomotive on the night of the fire testified at the trial that he shut off steam at a place designated as Rock Cut, which was upon or at the head of a descending grade, and from that point ran past plaintiff's lumber yard and mill without the use of steam. As we have just said, the evidence of witnesses on behalf of plaintiff con-tradicted this witness for defendant and others testifying to the same fact. But the possibility of a train running from Rock Cut past the mill and lumber yard by its own momen-tum, after shutting off steam, is not contradicted by plaintiff's witnesses. Indeed, plaintiff himself testifies that it has been done since the fire, though he never saw it before. We may therefore say that the possibility of a train running past the lumber yard without the use of steam, in the manner testified to by plaintiff's witnesses, cannot be questioned upon the evi-dence submitted to the jury.

By the consent of the parties and the sanction of the court, the jury were permitted to make an inspection of the railroad and the locality of the fire. For this purpose a train, or locomotive and two cars, were provided by the defendant. The deputy sheriff, a witness who was the engineer that established the grades of the road, and certain employes of defendant in charge of the train, accompanied the jury on the excursion. It was agreed that the attorneys of the parties should accompany the jury. Defendant's coun-sel did go upon the train, but, for some reason, plaintiff's did not. The train passed over the road from Rock Cut to a point beyond the lumber yard and mill once or twice. It was stopped at the locality of the fire, and the jury inspected the ground.

1. PRACTICE: inspection by jury.

It is alleged that defendant's employes in charge of the train tested the practicability of running from Rock Cut past the lumber yard without using steam and actually did accom-plish it, which was known to some of the jurors. The expe-riment, as it is called by counsel, is the ground upon which the plaintiff charges misbehavior of defendant's employes, participated in by the jurors or some of them.

All that the jurors could possibly have learned by the experiment was, that it was practicable for a train to run from Rock Cut to a point beyond plaintiff's mill and lumber yard without the use of steam. This fact the evidence established beyond dispute. There could have resulted, therefore, no possible prejudice to plaintiff. Conceding that the experiment was improper, it was innocent in its effects. We cannot punish defendant for the unlawful act of their employes that wrought injury to no one. In the view, therefore, that no possible prejudice was wrought plaintiff in the trial, by the act complained of, it afforded no ground for disturbing the verdict.

We are not prepared to hold that the experiment itself was not proper and unauthorized by the law. The jury were, by the consent of the parties and the order of the court, in a position where they could satisfy themselves upon a question of fact which they were required to determine, namely, the practicability of a train running without steam on the part of the railroad indicated. The truth could be unerringly reached by the experiment. Even did the evidence leave the question in uncertainty, they ought to have used the means at hand to arrive at the truth. The question involved is a physical fact. Its solution by the experiment would leave no chance for error in judgment or opinion. Why not employ the experiment to reach the truth, the end and aim of all trials at law? The case is not unlike many we could state where common sense, and doubtless the rules of law, would permit experiments before the jury for the purpose of determining a disputed fact. Suppose experts should differ as to the effect of the union of two chemical bodies; what objection could exist to an experiment before the jury to determine the true result? Suppose a question arose in a case as to the weight of a gold coin, the witnesses of the parties giving conflicting evidence on the subject. Why not weigh it in the presence of the jury? Or, suppose an alteration in a deed can only be determined by the use of artificial assistance to the eye. Why should not jurors be permitted to use such aids to enable them to decide the case in accord with the very truth? But the questions here presented we do not determine. We suggest

these thoughts to show that there are arguments based upon the high considerations of justice and truth in support of the propriety of the alleged experiment, if made fairly by the jury and not in disobedience to the directions of the court governing their conduct, while in charge of the deputy sheriff.

The District Court regarded the experiment in question as misbehavior on the part of defendant, sufficient to require the verdict to be set aside, and upon this ground alone was the order to that effect made. The charges of misbehavior of certain jurors made in the motion of plaintiff were not sustained by the court below; they are, however, urged upon our attention. We will proceed to consider them.

II. One Clark, a witness for defendant, testified that the evening preceding the fire he was at plaintiff's mill and sat upon a board projecting from a lumber pile while waiting for some one. It was raining at the time and he chose his seat to be protected from the rain. While sitting there he " felt a great heat," to use his own language, " from under the lumber pile and got down and looked under; it was very hot." He stated that he named the circumstance to his brother and another who, using his own words " laughed at me so much about it that I did not tell Stockwell or say anything more about it." This witness was with the jurors when they made the inspection of the locality and one or more of them requested him to point out the place where he was sitting when he felt heat as he had testified before the jury; he complied with their request. The communication between the jurors and witness was highly improper. We are clear, however, in the opinion, that no prejudice could have resulted to plaintiff therefrom. There was no dispute as to the place where the witness stated he was sitting and it had nothing to do with the force or credibility of his evidence. The jurors could not, therefore, have been influenced by the information they obtained from the response of the witness to their inquiry. The transaction, therefore, is no ground for disturbing the verdict.

III. It is shown that one of the jurors, pending the trial, in conversation with certain of his neighbors, 2. JUROR: statements of. who had no interest whatever in the cause, and

who in no manner participated in the trial, produced small bits of cinders, which were exhibited at the trial and said to have passed through the netting of the engine, and alleged to have set out the fire, and expressed the opinion that, in view of the fact it had rained the night of the fire, cinders of the size of those exhibited could not have carried the fire which consumed plaintiff's property. No possible blame is attached to the person with whom the juror conversed and defendant and its employes are in no way connected with the circumstance. The act and conversation of the juror are to be reprehended and, as they were in violation of the law and the express instruction of the court, ought to have subjected the offender to proper punishment. But it clearly appears that no effort was made or intention entertained by any one to influence the juror by means of the conversation. We do not discover any ground upon which we can base a conclusion that any prejudice resulted to plaintiff from the circumstances. In the absence of fault on the part of defendant and prejudice to plaintiff, we are of the opinion that the misbehavior of the juror ought not to vitiate the verdict.

The other objections presented with motion for a new trial are not urged in this court; we are not, therefore, required to notice them.

IV. We recognize the rule that the granting of new trials rests largely in the discretion of the court trying the cause, whose rulings upon the question will not be reversed unless an abuse of such discretion is shown. But it must be remembered that this discretion with which the court is clothed is a legal discretion, and its exercise must accord with the rules of the law. If a new trial is granted upon insufficient cause or for reasons in conflict with the law, we must regard the case as one of abuse of the discretion of the court. In the case under consideration we all unite in the opinion that the new trial was granted upon insufficient cause; the judgment of the court below is therefore reversed, and the cause is remanded for judgment upon the verdict.

This conclusion makes it unnecessary for us to consider the question raised upon plaintiff's appeal.     REVERSED.

3. NEW TRIAL: discretion of the court.