FIRST NATIONAL BANK OF DENVER v. HENRY C. SCOTT.

FILED APRIL 11, 1893.   No. 4515.

1. **Bill of Sale** : GOODS SUBSEQUENTLY MINGLED WITH PROPERTY TRANSFERRED. The owner of a mill executed a bill of sale to a bank on a large quantity of flour, feed, and other property in the mill. Prior to the execution of the bill of sale the mill owner had ordered several cars of wheat from a warehouse-man in another county, and one car so ordered was shipped one day after the execution of the bill of sale and two days thereafter received at the mill, and a portion or all ground into flour and mixed with the stock in the mill. *Held,* That in no event did the bill of sale cover that wheat, and the person who claimed to be the owner of the mill was liable for the value of the wheat.

2. ———: ———: REVIEW: HARMLESS ERROR. Where the proof on the essential facts in the case is practically undisputed and the verdict conforms to the proof, the verdict will not be set aside even if some of the instructions are not entirely accurate.

3. ———: ———. Where personal property, such as wheat, has been delivered to a mill and wrongfully converted into flour and stored with other flour belonging to the mill owner, the owner of the wheat will be entitled to such portion of the flour as the wheat would probably produce.

ERROR from the district court of Webster county. Tried below before COCHRAN, J.

*Case & McNeny* and *J. S. Gilham,* for plaintiff in error.

*St. Clair & McPheely, contra.*

MAXWELL, CH. J.

On the 21st of December, 1888, the Red Cloud Milling Company executed a bill of sale to the plaintiff in error on "all the flour, feed, meal, and grain of all kinds, manufactured and unmanufactured, now in the mill, elevator, cribs, and warehouse of the Red Cloud Milling Company, at Red Cloud, Nebraska; 100 head of steers, cows, and calves now in the feed yards of the said milling company; one span of black mares, one set of double harness, one lumber wagon, all grain on track at Red Cloud, Nebraska." At the time this bill of sale was executed there were about sixty tons of flour and a large amount of bran and feed in and attached to the mill. There seems to have been no immediate change of possession. Prior to the execution of the bill of sale the milling company had ordered several cars of wheat from the defendant in error, and on the 22d of that month one car was shipped by him to the milling company from Axtell, Nebraska, and was received on December 24th of that year, and a portion, at least, was ground into flour and mixed with the other flour stored in the mill, and the like mixture seems to have been made of the wheat. The defendant in error thereupon commenced an action by attachment against the milling company to recover the value of the car of wheat, viz., $619\frac{50}{100}$ bushels of wheat at 90 cents per bushel, amounting to $557.85. The return of the sheriff on the order of attachment is as follows:

"December 29, 1888, received this order, and according to the command thereof I did on the same day, at 11 o'clock A. M., in the presence of H. H. Eckman and Wesley Street, two credible persons, residents of the county, attach the following goods and chattels, to-wit: About

300 bushels of wheat valued at 80c., $240; 1050 50-lb. sacks of R. C. flour, $1.37½, $1,443.75; 20 50-lb. sacks of White Loaf at $1.62½, $32.50; 130 50-lb. sacks of New Deal at $1 per sack, $130; and after administering an oath to said H. H. Eckman and Wesley Street to make a true inventory and valuation of said property in writing, I then with them made an inventory and appraisement of said property, which is herewith returned; I also, on the same day, delivered to said defendant, the Red Cloud Milling Company, by Dwight Jones, president, and R. D. Jones, secretary, a certified copy of this writ. After getting 1,200 sacks of flour I released all wheat, and it was turned back to Dwight Jones, president of the Red Cloud Milling Company.           H. C. SCOTT, *Sheriff.*

"By J. C. WARNER, *Dept.*"

The plaintiff in error thereupon brought an action of replevin and reclaimed the property.   The defendant in answer to the petition alleged : "That on or about the — day of ——, 188–, the Red Cloud Milling Company, a corporation organized and doing business in and under the laws of the state of Nebraska, was indebted to A. G. Scott & Son in the sum of $1,000.35 in a cause of action arising upon the purchase by said Red Cloud Milling Company of a quantity of wheat from the said A. G. Scott & Son, and on said last named date the said A. G. Scott & Son commenced an action by attachment against the said Red Cloud Milling Company in the district court of Webster county, Nebraska, and caused an order of attachment for the sum of $1,000.35 to be issued in said cause and delivered to the defendant, as sheriff aforesaid, for levy ; that under and by virtue of said order of attachment, and in pursuance of the command thereof the defendant, as such sheriff, levied upon 1,050 sacks of wheat flour 'Red Cloud Brand,' 20 sacks of wheat flour 'White Loaf Brand,' and 130 sacks of wheat flour 'New Deal Brand,' being the goods and chattels mentioned in said petition herein, and took the same into his custody;

42

that said flour was at the time of said levy and still is the sole property of the said Red Cloud Milling Company, and was liable to be levied upon for the satisfaction of said debt and taken under said order of attachment for the satisfaction of the same; that said action is still pending and undecided in said district court; that the defendant, under and by virtue of said writ of attachment, held the possession of said flour until on or about the 27th day of March, 1889, when the same was taken from his possession and custody by C. Schenck, coroner of said Webster county, Nebraska, by virtue of a writ of replevin in this action. Wherefore defendant prays a return of said goods, or if a return cannot be had, then for the value thereof to the extent of said order of attachment, to-wit, $1,000.35, with interest and costs of suit."

On the trial of the cause the jury returned a verdict in favor of the defendant in error for the sum of $557.85 and 1c. damages. They also found the value of the property levied upon was $1,200.

A number of objections are made on behalf of the plaintiff in error to one of the instructions. In our view, however, these objections are not material, as it is evident that the verdict is the only one that should be rendered under the proof. It is clearly shown that a car of wheat containing $619\frac{50}{100}$ bushels was received and placed in the mill after the bill of sale was executed. This was not covered by the bill of sale, and therefore the party using it is liable for its value. The plaintiff in error claims to have been in possession of the mill and was running it when the wheat was received and therefore is liable for the same, and the jury so found. The case is simple and did not require a volume of instructions for the guidance of the jury. Judgment was rendered in the attachment case in favor of the defendant in error before the trial in this case took place, and $347.50 appears to have been realized from the property attached therein. The judgment

on the attachment in favor of the defendant in error, and against the milling company, was for the sum of $1,029.35 and costs, from which the sum of $347.50, amount due from garnishees, is to be deducted. The jury in the case at bar, however, found that as against the plaintiff in error the recovery should only be for the value of the car of wheat.

2. Objections are made to a general levy of the attachment upon the property of the plaintiff in error. We do not care to impute wrong motives to the plaintiff in error in appropriating the wheat. Where a confusion of goods is made fraudulently by one who owns a part thereof, and after being made it is impossible to identify or apportion the property of each owner, the one not at fault will be entitled to the whole. This is upon the principle that a party by wrongfully mixing the goods of another cannot thereby deprive the other of his property or profit by his own wrong. Therefore, it being impossible to separate the mass, he must lose the whole. (*Jewett v. Dringer*, 30 N. J. Eq., 291). But forfeitures are not favored in law, and it must be an extreme case that will justify the taking of the property of one person and giving it to another. Whenever it is possible, therefore, to make a division of the property and give to each one his share a court will make such division. Thus in *Chandler v. De Graff*, 25 Minn., 88, where the plaintiff delivered to the defendant about 20,000 railroad ties in excess of the contract, which the defendant refused to accept, but had mingled the same with those which were accepted so that they were undistinguishable, the plaintiff was permitted to take out of the mass of the ties the number of such excess. The same rule in substance was applied in *Stone v. Quaale*, 29 N. W. Rep. [Minn.], 326; *Arthur v. Chicago, R. I. & P. R. Co.*, 61. Ia., 648; *Inglebright v. Hammond*, 19 O., 337. Although the conversion of the wheat to flour was made without the consent of the defendant in error, yet the property in its changed form is susceptible of a fair division and this

seems to have been made by the jury. The property being susceptible of an equitable division, and being so divided, the plaintiff in error has no cause of complaint. The judgment is right and is

AFFIRMED.

THE other judges concur.