## J. N. KRAMER & SON V. MESSNER & COMPANY, Appellants.

**Construction of Contract:** WARRANTY. An agreement to furnish a steam-heating apparatus for a greenhouse, of ample capacity to warm each room to seventy degrees in the coldest weather, with a boiler of sufficient capacity to maintain a continuous run for ten hours, is not fulfilled by bringing the temperature up, in the coldest weather, to the required degree, for a short time in the day.

**Rescission by Vendor:** FAILURE TO PAY. A vendor of personal property cannot rescind a contract of sale, after delivery, merely because the vendee fails to make payments according to the terms of the contract.

**Damages:** FAILURE TO HEAT GREENHOUSE. Evidence that defendant knew that the building for which he supplied a steam-heating apparatus was intended for use as a greenhouse, is admissible on the question of damages for failure of such apparatus to furnish sufficient heat.

**PAROL VARIANCE.** Parol evidence that plaintiff in an action for damages for failure of defendant to furnish a sufficient steam-heating apparatus for warming a greenhouse, told them before the contract was let that he was going to use the building as a greenhouse, and that sixty-five degrees was as low a temperature as should be permitted for the general class of plants kept by him, is not inadmissible as varying the terms of the contract, where it was stated therein that the apparatus was for a greenhouse.

**Evidence:** REBUTTAL. Evidence that plaintiff, with a poorer grade of coal and a less amount of radiation, and when his greenhouse was not in as good condition as when defendant's heating apparatus was in the same, and during colder weather, had no difficulty in securing proper heat for the greenhouse, is admissible to rebut a claim of defendant that the failure of the apparatus furnished by them was due to the condition of the greenhouse, alone.

**SAME.** Evidence that plaintiff used the kind and grade of coal which defendant directed them to use, after the latter complained of the character of that which plaintiffs were using, and that the results were no better, is admissible to rebut evidence by defendant that the failure of the steam-heating apparatus furnished by them for heating plaintiff's greenhouse, was due to the use of improper fuel.

ORDER OF EVIDENCE: *Discretion.* An appellate court will not interfere with the discretion of the trial court as to the order in which evidence is permitted to be introduced.

*Appeal from Linn District Court.*—HON. WILLIAM P. WOLF, Judge.

FRIDAY, FEBRUARY 1, 1897.

ACTION at law to recover damages of defendants for failure to furnish a sufficient steam-heating apparatus for warming a greenhouse, owned by the plaintiffs, in the city of Cedar Rapids. Trial to a jury. Verdict and judgment for the plaintiffs. Defendants appeal.—*Affirmed.*

*C. J. Deacon* and *M. P. Smith & Son* for appellants.

*Rickel & Crocker* and *Jamison & Burr* for appellees.

DEEMER, J.—On the eleventh day of August, 1893, the parties to this litigation entered into a written contract, of which the following are the material parts: "We hereby propose to furnish for your greenhouse and office on 3rd avenue a first-class low pressure hot-water heating apparatus, for the sum of $525.00 (five hundred and twenty-five dollars), according to the following specifications: System and quality of piping: Flow and return pipes properly graded and suspended in expansion hangers, with provision for expansion of all parts, will be of ample size to supply each radiator, and so constructed as to insure proper circulation when temperature of water is 20 degrees above that of surrounding atmosphere. Boiler, trimmings, expansion tank, etc.: Furnish and place in proper location one No. 6 Haxtun base-burning magazine steel hot water boiler, with

improved rocking grates for soft coal. This magazine to have sufficient capacity to maintain a continuous run for 10 hours without attention. All provided with doors, flue plates, fire liners, anchors, rods, binders, castings, etc., ready and set in masonry. To this boiler will be attached one improved automatic hot water draft regulator, adjustable to the requirements of the weather, one hot water thermometer, necessary air and drain cocks, together with fire and cleaning tools ready to operate the boiler complete. Also locate in boiler room one 12x36 heavy galvanized iron expansion tank complete, with glass water guage, overflow and atmospheric pipes, and connect with domestic water supply. Radiation will be provided as follows: Office, 3 radiators, containing 285 sq. ft.; greenhouse, 2 pipe coils, containing 720 sq. ft. The owner will provide, for the exclusive use of this apparatus, a good smoke flue, not less than 8x12 inches inside, extending from bottom of cellar to point sufficiently elevated above roof to be unaffected by adverse winds; also, water supply in tank room, ready for iron pipe connection, opening from boiler to boiler room, not less than —— wide, covering and protecting pipes; fuel for painting and testing the plant; and any work that shall be necessary to put doors, windows, or other parts of the building in thorough repair, so as to avoid undue waste of heat. All material to be the best of their several kinds, and the entire job a thorough and finished one. Anything necessary thereto, even though not provided in this specification, will (unless the same is hereinbefore especially excepted) be furnished, notwithstanding such omission. * * * Payments: Beginning with Jan. 1st, 1894, $50 per month each month thereafter; the entire amount to be paid by April 1st, 1894. Finally, the entire apparatus will be put up by an experienced mechanic, in a good, neat, substantial, and workmanlike manner, first class in every respect, and

in the best and most approved form known to the trade, and when finished will be put in operation, thoroughly tested, and left ready for use, and is hereby fully guaranteed of ample capacity to warm each room in which radiation is located, to 70 degrees in the coldest weather."

The plaintiffs claim: That they were conducting a greenhouse in the city of Cedar Rapids, which the defendants well knew, and that the defendants, who are plumbers residing at the same place, undertook, by contract just referred to, to heat the house in such a way as that plaintiffs might keep plants and flowers therein during the winter season. That, in virtue of said contract, defendants placed in plaintiffs' building a hot water heating apparatus, but that the same was imperfect and defective, and did not comply with the contract, in that it was not properly located; the magazine was not of sufficient capacity and character to maintain a continuous run of ten hours without attention; that apparatus was not of sufficient capacity, nor was it arranged in a proper manner, or so constructed as to heat the building and rooms where radiation was provided, to seventy degrees in the coldest weather; and the same did not comply with the contract, and was made of defective material. That they complied with the terms of the contract on their part, but that defendants did not, and by reason thereof a large number of plaintiffs' plants and shrubs were destroyed by the cold. They also say that they were compelled to build a flue for defendants, under the terms of the contract, at an expense of twenty-five dollars, and that said flue is wholly worthless; that they were also compelled to erect a shed or boiler room, at an expense of fifty dollars, to accommodate defendants, and that this is of no value to them; that the failure of the apparatus to work caused plaintiffs

a large amount of expense for labor, and they were also compelled to buy stoves to warm the building during a part of the winter of 1893-4; that defendants agreed and promised, at various times, to remedy the defects, and to make the heating plant comply with specifications, and after much delay they finally provided stoves, with the declared purpose of heating the building while the heating apparatus was being repaired, but instead of repairing they removed the same, and left plaintiffs with nothing to heat with save the stoves referred to,—and plaintiffs ask judgment for the sum of nine hundred dollars. They also prayed judgment for the sum of six hundred dollars in addition, for loss of the rental value of the building for the term of six months; but this claim was denied by the court, and the case went to trial upon the claim for damages to the personal property in the building and for expenses incurred. Defendants admit the execution of the contract, and say that they fully performed the same on their part, but that plaintiffs failed to on their part, in this: That they did not furnish a flue of the required size; that they did not put the doors and windows and other parts of the building in proper repair, and did not follow defendant's instructions in the management of the plant; that they used inferior coal, and did not fire as directed; that they have never paid any part of the purchase price, and because of the faults and breaches of contract on the part of plaintiffs, they were compelled to remove the apparatus; that the plaintiffs wilfully refused to comply with the contract on their part, with intent to cheat and defraud defendants out of the purchase price of the apparatus, and that defendants, upon hearing of their intent, rescinded the contract by retaking possession of the property. And by way of counterclaim, defendants asked judgment for the sum of one hundred

and seventy-three dollars and twenty cents, as damages from plaintiff's failure to take and pay for the plant. The reply was, in effect, a general denial. The jury returned a verdict on these issues for plaintiffs in the sum of five hundred and twenty-five dollars, on which judgment was rendered, and this appeal followed.

I. Evidence was introduced, over defendants' objections, tending to show the rental value of the building. It is said that the witnesses were incompetent to prove value, and that such testimony was irrelevant and immaterial. · The court, in its instructions, took this evidence away from the jury, and consequently we are not required to consider the matter.

II. After defendants removed their apparatus from the building, the plaintiffs had another steam-heating plant put in, and this they operated during the winter of 1894-5. This was a high-pressure system, and seems to have operated in a satisfactory manner. Appelles were permitted, over the appellants' objections, to prove the amount of radiation that was put in for the new plant, and the results obtained from it. They were also permitted to prove that the building itself was not in so good a condition for heating in the years 1894-95 as in the years 1893-94, and that the weather was colder in the winter of the former year than of the latter. It is argued, that all this evidence was erroneously admitted, for the reason that testimony as to comparative results obtained from the two plants, in view of their difference in construction and methods of operation, is incompetent and collateral to the issues. That such is the ordinary rule, with reference to tests, must be admitted. See *Osborne v. Simmerson*, 73 Iowa, 510 (35 N. W. Rep. 615); *Shockley v. Van Eaton*, 81 Iowa, 420 (46 N. W. Rep. 1097, and cases cited. But here was an issue upon the question as

to whether or not the failure of the apparatus to do the work intended was due to the faulty construction of the building, and to the failure of plaintiffs to put it in proper condition, so that it might be heated by the amount of radiation which the defendants agreed to furnish. Now, the evidence adduced tended to show that with a poorer grade of coal, a less amount of radiation, a house not so close or in so good a condition as when defendants put in their apparatus, and with the thermometer from ten to fifteen degrees lower, plaintiffs had no difficulty in securing heat from the apparatus they subsequently put in. Bearing in mind the issues in the case, it seems to us that such evidence was admissible, for it certainly demonstrates that the fault was not wholly in the greenhouse, and leads the mind to the conclusion that it must have been in the apparatus. It has been quite frequently held that, upon disputed questions of fact, a test fairly made may be given in evidence, when such evidence points with sufficient certainty to one side or the other of the controversy. See *Burg v. Railroad Co.*, 90 Iowa, 106 (57 N. W. Rep. 683); *Stockwell v. Railroad Co.*, 43 Iowa, 470; *Brooke v. Railroad Co.*, 81 Iowa, 504 (47 N. W. Rep. 74); *Eidt v. Cutter*, 127 Mass. 522; *Williams v. Taunton*, 125 Mass. 34; *Leonard v. Railroad Co.*, 21 Or. 555 (28 Pac. Rep. 887), 15 L. R. A. 221. It seems to us that the evidence was competent, and properly received in evidence for the purpose of aiding the jury in determining whether the fault was in the building, or in the apparatus which defendants placed therein for the purpose of heating it.

III. Appellants complain of the action of the court below in permitting one of appellees to prove that he told defendants that he was going to use the building as a greenhouse, before the contract was let; and in permitting him to show that sixty-five

degrees was as low a temperature as should be permitted for the general class of plants appellees kept in the building. It is said in argument that the contract was in writing, and that such evidence as is here complained of was inadmissible, for the reason that it conflicts with and contradicts the writing. The court also, in his instructions, placed a construction upon the contract which is said to be erroneous. These instructions, so far as material, are as follows: "If you find from the evidence that the defendants, at and prior to the making of said contract, were informed of or knew of the use to which plaintiffs would apply the buildings in which the heating apparatus was placed, and which it was designed to warm; and that the defendants failed and neglected to so construct or prepare said heating apparatus that it would not maintain a continuous run for ten hours without attention; and that plaintiffs were unable to heat said greenhouses to seventy degrees in the coldest weather, or heat them to a sufficient extent to grow and protect plants therein; and that the plaintiffs used reasonable care and diligence in protecting their building and greenhouses, and in providing heat for the same, and took all reasonable care to prevent undue waste of heat, and complied with the instructions of the defendants with regard to the running of said heating apparatus; and that plaintiffs performed all their part of said contract by them to be performed, and the performance of which was not waived by the defendants; and that by reason of the defect in the heating apparatus in controversy, or in the location and placing of it, the temperature got so much less in the plaintiffs' greenhouses that their growing plants were injured or destroyed,—then and in that event you will allow the plaintiffs the fair market value of said plants so destroyed, and the injury done to those not destroyed." "You will notice

by the terms of the contract in controversy, that the heating apparatus was guaranteed to maintain a run of ten hours without attention, and, further, that the heating apparatus in controversy was guaranteed to have sufficient capacity to heat the rooms in which radiation was furnished, to seventy degrees in the coldest weather. Under these provisions of the contract you are instructed that it was the duty of the defendants to provide a heating apparatus that would be sufficient to maintain a degree of temperature, after having been properly adjusted and fired, for ten hours without attention, and to a sufficient degree in the coldest weather to protect plaintiffs' plants from freezing, and to give them the requisite temperature for growing, not exceeding, however, seventy degrees." We consider the questions presented under one head, for they are so related as to be more quickly disposed of in this manner. It is sufficient to say, with reference to the first complaint, that the written contract shows on its face the purpose for which appellees wanted the heating apparatus; and it follows, as a matter of course, that plants and shrubs were to be kept therein, and that the building should be so heated as to preserve them from the cold. The testimony of the appellee was without prejudice, even if erroneously admitted. But we think the evidence with reference to what plaintiffs said to the defendants, as to the purpose for which they wanted the apparatus, was proper, under the circumstances disclosed, as bearing upon the question of the measure of damages. Defendants are to be held responsible, not only for the damages which efficiently and approximately follow their breach of contract, but also such other and special damages as the parties may have contemplated would follow the breach of contract. Knowledge of special circumstances tending to enhance the damages in cases of breach of contract, is always deemed to be relevant.

*Mann v. Taylor*, 78 Iowa, 355 (43 N. W. Rep. 220); *Bell v. Reynolds*, 56 Am. Rep. 54; *Griffith v. Burden*, 35 Iowa, 138.   The testimony as to the degree of temperature needed to sustain the plants was admissible, for several purposes: *First*, because defendants must have known that such temperature, whatever it might be, was required; and, *second*, because it was proper for plaintiffs to show that their plants were destroyed by reason of the low temperature.   In the instructions quoted, the court below properly construed the contract.   The entire job was to be a thorough and finished one, and was intended to afford proper heat for the greenhouse, and was guaranteed of ample capacity to heat each room in which radiation was located, to seventy degrees in the coldest weather.   The boiler was to have sufficient capacity to maintain a continuous run for ten hours.   It is too clear for argument that defendants were bound by the contract to furnish a sufficient degree of heat to answer the purposes in view in putting in the apparatus, provided this did not exceed seventy degrees.   The object all parties had in view was the heating of the greenhouse so that it could be used for storing growing plants during the winter season; and it will not do to say, as appellants claim, that if the boiler was capable of producing the seventy degrees of temperature at any one period of time, it sufficiently answered the requirements of the contract.   We see no error in the instructions quoted.

IV.   Defendants complained of the character of fuel that plaintiffs were using, and at the trial insisted that the failure of the apparatus to work, was due to this cause.   In rebuttal, plaintiffs were permitted to show that they used a different grade of coal, and a kind the defendants directed them to use, and that the results were no better. Plaintiffs were also allowed to prove in rebuttal that

certain ventilators in the greenhouse were of necessity left open at night. They were also permitted to show, by reference to a memorandum, the temperature in the various portions of the building, when a certain Mr. Burrows was present at the building. Complaint is made of each and all of these rulings. We think they were correct. While some of the evidence may not have been strictly rebuttal, yet all of it was relevant and material, and we cannot interfere with the discretion of the trial court as to the order in which evidence shall be taken. Counsel also contend that they were unduly restricted in their cross-examination with reference to the memorandum just referred to. This was also a matter so largely within the discretion of the trial court that we ought not to interfere.

V. In the seventh instruction the court told the jury that it was necessary for plaintiffs to take reasonable precautions to save themselves from loss or injury after they knew of the defective condition of the apparatus, but also said that "if they found from the evidence that the defendants, from time to time, promised that they would remedy the defects, if any, in the heating apparatus, so as to make the thing work properly, and that plaintiffs relied upon these promises in good faith, then plaintiffs would be regarded as having used due diligence." This qualifying clause is complained of, not because it does not state a correct proposition of law, but for the reason that there is no evidence to support it. This point is based, as it seems to us, on a misapprenhension of the record. There is evidence from which the jury may have found promises to repair and to remedy the defect, down to the very day on which the apparatus was removed, which was about the middle of January, 1804. True, much of the damage to plaintiffs accrued after the removal of the apparatus from the building; but the

jury was justified in finding that the plaintiffs used reasonable care to protect themselves from damage after that date. Appellants also contend that the appellees did not, as a matter of fact, use reasonable diligence to protect themselves from injury. This matter was fully and fairly submitted to the jury by proper instructions, and there was evidence to sustain the plaintiffs' claim that they did use such diligence, and the verdict is in favor of the plaintiffs on this issue. While we should be disposed to find the other way, had we to decide the question, yet there is no such lack of evidence as to justify us in interfering.

VI. The court instructed the jury that, before appellants could recover on their counter-claim, they must show that plaintiffs fraudulently induced them to place the apparatus in the building, and then fraudulently prevented the same from heating the building. It is said that this instruction is erroneous, and that the court should have given instruction No. 3, asked by defendants, which was to the effect, that if the fault of the apparatus to work was due to the failure of the plaintiffs to comply with their part of the contract, and if plaintiffs refused to accept and pay for the apparatus, and that, because of such failure and refusal, on plaintiff's part, defendants removed the said apparatus, then defendants would be entitled to recover on their counter-claim. In view of the verdict returned, it is manifest, that no prejudice resulted to defendants by reason of the court's refusal to give the instruction asked, even if it be conceded to announce a correct rule of law. But we do not think the instruction asked enunciates a correct rule of law. It has never been held, in any well-considered case, that a vendor of personal property can rescind a contract of sale, after having delivered the property into the hands of the vendee, simply because the vendee failed to make payments

according to the terms of the contract. In order to justify a rescission there must, as a general rule, be fraud, misrepresentation, or mistake. See *Kearney Milling & Elevator Co. v. Union Pacific Railway Co.*, 97 Iowa, 719 (66 N. W. Rep. 1059); *Starr v. Stevenson*, 91 Iowa, 684 (60 N. W. Rep. 217).

VII. Complaint is made of the ruling of the court in rejecting the testimony of witness Bunce, offered on behalf of appellants. The evidence was objectionable because it placed the witness not only in the attitude of the court, but also allowed him to assume the role of a juror. He was asked not only to construe the contract, but to say whether the apparatus was of sufficient capacity to properly heat the building. Clearly, such evidence was not admissible. This witness was allowed to state everything he knew material to the controversy, and to give his opinion as to the cause of unsatisfactory results. This was all defendants were entitled to.

VIII. Some other errors are assigned, but the questions raised by them are all disposed of during the course of this opinion, and we need not consider them further. Appellants' main contention seems to be that the court below erroneously construed the contract entered into between the parties. It is said that the jury were told, in effect, that the contract called for a magazine which should have sufficient capacity to maintain a continuous run, and to warm each room where radiation was provided, to seventy degrees, in the coldest weather, for ten hours, without attention. A reference to the instructions given in respect to this matter will disclose the fact that the court below did not so rule. The construction placed upon the contract by the court below was as favorable to appellants as the facts would warrant, and if there was any error it was in their favor. It will not do to say that the contract was

fulfilled if the temperature was brought up to the required degree at any time in the day during the coldest weather. It was continuous heat that appellees wanted, and that appellants knew they must have. Alternating degrees of heat was not what they contracted for. We find no reversible error in the record, and the judgment is AFFIRMED.