PAUL SCHMINKE COMPANY, APPELLANT, v. WINFIELD S. HOLDEN, APPELLEE.

FILED MARCH 10, 1910.    No. 15,939.

Appeal: INSTRUCTIONS: REVIEW. An instruction submitting a defense not raised by the pleadings, supported by the evidence or suggested in defendant's requests to charge the jury, is prejudicially erroneous where the evidence will support a verdict for the plaintiff and a verdict is returned for the defendant.

APPEAL from the district court for Otoe county: HARVEY D. TRAVIS, JUDGE. *Reversed.*

*D. W. Livingston, George H. Heinke* and *Pitzer & Hayward,* for appellant.

*W. F. Moran, contra.*

ROOT, J.

This action is prosecuted by a judgment creditor of Ed. Holden against Winfield S. Holden for the latter's alleged untruthful disclosure in garnishment proceedings before judgment in a suit against Ed. Holden. Defendant prevailed, and plaintiff appeals.

The evidence discloses that on and prior to October 10, 1906, defendant owned a grain elevator in Burr and considerable land in the neighborhood of said village. In 1903 he entered into a contract with two of his sons, Ed. Holden and E. L. Holden, whereby they agreed to handle, free of expense to him, such grain as he might store in his elevator, and they were given the right to use the machinery in, and one-half of, said building. Subse-

quently E. L. Holden withdrew from, but Ed. Holden continued to perform, the contract. In July and August, 1906, defendant delivered at his elevator about 4,000 bushels of corn, 1,500 bushels of wheat, 3,500 bushels of oats, and 400 bushels of rye. During the night of October 10, 1906, Ed. Holden absconded. October 11 defendant took exclusive possession of his elevator, and thereafter sold all grain contained therein. The evidence is conflicting concerning other material facts. No attack is made upon plaintiff's judgment against Ed. Holden or said garnishment proceedings, and they will be treated as valid.

1. The instructions are criticised at length, but will not be considered in detail, because it is believed upon the facts disclosed there was reversible error in modifying plaintiff's instruction numbered 23, and, as thus modified, giving it to the jury. The defendant testifies he paid 11 individuals an aggregate of about $3,400 for grain which he says they claimed to have stored in the elevator. The evidence shows that on October 5, 1906, Mr. Steinkuhler delivered 900 bushels of corn at the elevator to Ed. Holden. On the 18th of October he was paid $294 therefor by defendant. Steinkuhler testifies he sold the corn to Ed. Holden, but informed defendant that the witness wanted pay therefor; that defendant said he would treat the witness as he had "the rest of them," give him 34 cents a bushel for the corn, the market price, and Ed. would pay the remaining 4 cents of the contract price when he returned. Mr. Farmer delivered 986 bushels of corn at the Holden elevator October 10, 1906. Farmer testifies he sold and delivered the corn to Ed. Holden, but was not paid by him; that, after Ed. Holden left Burr, the defendant talked with the witness over the telephone and requested him to come to town, and thereafter said "he had settled with the rest of them and he wanted to settle with me for the corn"; that defendant wanted to buy the corn, but the witness said it had been sold to Ed., whereupon defendant said he would give 34 cents a bushel for the grain, and when Ed. came back he could pay the

remainder of the contract price, and the witness accepted the money, $335.

Defendant's version of his transactions with Steinkuhler and Farmer is that they denied having sold their corn to Ed. Holden, but contended it was merely stored in the elevator and he purchased it from them, and he is corroborated by the testimony of his son. The district judge instructed the jury that, if defendant purchased corn stored in the elevator by third persons, he would not be liable to plaintiff for any of that grain, and, if Ed. Holden absconded without paying for the grain delivered to him, his vendors would have the right to rescind and declare void such sales, retake the grain theretofore sold and delivered by them and resell it. There was no evidence tending to prove that Ed. Holden misrepresented any fact to secure possession of any grain in the elevator, that he did not intend when he purchased the grain to pay therefor, or that it was not unconditionally delivered. No witness testifies to a rescission of any contract with Ed. Holden. Upon the evidence it is doubtful whether the principle of rescission should have been submitted to the jury. *Kingsley v. McGrew*, 48 Neb. 812; *Kramer & Son v. Messner & Co.*, 101 Ia. 88. Plaintiff, however, in its request numbered 23, suggested the submission of that principle, and it will not be heard now to complain that the court instructed on that subject. *American Fire Ins. Co. v. Landfare*, 56 Neb. 482. The court modified plaintiff's said request so as to include: "And that said contract was rescinded either by the acts of Ed Holden or by his agent, if you find he did have any person acting for him after he left Burr, Neb." There is no evidence in the record that any person acting as agent for Ed. Holden rescinded any of his contracts, and the submission of that issue was prejudicial to plaintiff. According to the evidence, $630 worth of corn was delivered to Ed. Holden between October 5 and October 10, and none of it was shipped by him. There was no evidence to show that any

of defendant's corn was intermingled with this grain, and, if $500 be deducted from its value to cover Ed. Holden's exemptions, the jury, if they rejected defendant's theory of his transactions with Steinkuhler and Farmer, could find that a substantial balance of the proceeds of Ed. Holden's property was in defendant's possession at the time he was garnished.

2. Plaintiff contends that the issue of Ed. Holden's exemptions should not have been submitted to the jury, but the court did not err in this particular. The jury were permitted to allow $500 as exempt property, if they found from the evidence that Ed. Holden was a married man, the head of a family, and did not possess an interest in real estate subject to exemption as a homestead, and, if he absconded leaving his wife the head of a family, she would be entitled to that exemption. It is true defendant, as garnishee, denied having any of his son's property except a pony in his possession, but the evidence is conflicting, and defendant is justified in insisting upon his construction of the evidence. Should the jury find that any part of the grain in dispute belonged to the son, and not the father, it would still be defendant's duty to preserve his son's exemptions. *Mace v. Heath,* 34 Neb. 54, 790. And if Ed. Holden absconded leaving his wife to care for their infant children, she may demand and receive that exemption. *Frazier v. Syas,* 10 Neb. 115; *State v. Wilson,* 31 Neb. 462. We have not overlooked the fact that Mrs. Holden has not filed a schedule of her personal property or that of her husband, nor an affidavit as contemplated by the code, but she has appeared and testified to the facts.

Complaint is also made because the court gave as an instruction section 530 of the code. The evidence does not tend to prove that any of the grain in dispute was specifically exempt, and the instruction should not have been given, although we might not reverse the case if this were the sole error in the record.

Reference is made in the instructions to the right of an owner to recover his aliquot share of grain mixed with

other like property.  We think defendant's counsel is cor-
rect in that part of his written argument which reads:
"There is no evidence in the record to establish the con-
tention of appellant that the grain of appellee was mixed
with other grain", and, such being the fact, the instruction
on this point should not have been given.  It is quite prob-
able that upon a disclosure of the facts the law relating
to the confusion of goods may apply.  Some features of
the law on this subject have been settled in Nebraska.
*Grimes v. Cannell,* 23 Neb. 187; *First Nat. Bank v. Scott,*
36 Neb. 607.  On the entire record we are constrained to
find there is error prejudicial to plaintiff.

The judgment of the district court therefore is reversed
and the cause remanded for further proceedings.

REVERSED.